J-S45004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHAWN WILLIAMS, | |
| Appellant | No. 2388 EDA 2012 |

Appeal from the Judgment of Sentence July 11, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012558-2010

BEFORE:  BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 28, 2014**

Shawn Williams appeals from the judgment of sentence of fifteen to thirty years imprisonment that was imposed after he was convicted at a nonjury trial of rape, unlawful contact with a minor, unlawful restraint, and endangering the welfare of a child.  We affirm.

The victim, A.H., was thirteen years old on August 17, 2010, the day of the attack.  The evening of August 16, 2010, A.H. was at the Philadelphia home her sister, Monica, shared with her husband, Appellant and their baby daughter.  At approximately 11:00 p.m., Appellant and Monica began to argue, and about one hour later, Appellant evicted Monica from the house.  She was not permitted to take either the baby or her sister with her.

_____

[*]  Former Justice specially assigned to the Superior Court.

A.H. was watching television with her niece. Shortly after Monica left, A.H. put her niece to bed. As A.H. was returning to the first floor to turn off the television, Appellant came into the hallway. A.H. described what occurred next, as follows. Appellant "grabbed my right arm and had pulled me into the [bed]room, and he put both hands on my shoulder[s] and pushed me on the bed." N.T. Trial, 5/24/11, at 20. A.H. told him to "get off" and pushed him away. *Id*. at 21. Appellant rebuked the child's attempt to avoid the attack. A.H. testified that she refused Appellant's demand to remove her clothing, so Appellant "took them off for me. I kept trying to pull them up." *Id*. at 22. Appellant inserted his finger into the victim's vagina, and then placed his mouth on her vagina. A.H. continued to push and scratch Appellant and tell him to get off her. Appellant ignored A.H., and then inserted his penis into her vagina. A.H. said, "It hurt and it was a lot of pressure." *Id*. at 29. A.H. reported that the pain from Appellant's penis was a nine on a scale of one to ten. *Id*. at 46. Appellant also placed his hands and mouth on her breasts. At that point, Appellant placed a pillow over A.H.'s face, and she ceased screaming at him.

When Appellant stopped his assault, A.H. dressed herself and retrieved her niece, who had been crying and screaming during the crime. She went downstairs with the child and began to watch television. Then, Appellant "came downstairs and said if I tell anybody, he's going to kill me and he said that he's going to kill my family." *Id*. at 30-31. Eventually, A.H. fell asleep in her niece's room.

A.H.'s mother came to pick her up at approximately 7:00 a.m. on August 17th. After Appellant left the house, A.H. immediately told her mother about the assault, and they went to the police station. Police transported the victim to the hospital, where she was physically examined. Her vagina still hurt and she "couldn't use the bathroom." *Id*. at 35. A.H. reported that, at the hospital, the pain continued to be a nine. *Id*. at 47.

There were various stipulations entered into evidence after A.H. testified. At the hospital, "doctors found two bilateral lacerations that were .5 centimeters a piece on the complainant's labia[.]" *Id*. at 74. A rape test kit was administered at the hospital, the hospital gave the kit to the Special Victims' Unit, and the kit was lost by the unit. Thus, there were no results from the rape kit admitted into evidence. The victim's clothing had no fluids or hair upon which a DNA test could be performed. Appellant's sheets were taken from the residence but not tested.

Finally, it was stipulated that two police officers proceeded to Appellant's residence and waited in their car to watch the house. "They observed the defendant walk up to the front porch of the property, look around, and then begin walking" away. *Id*. at 74. Police followed Appellant in their car, and Appellant began to run away. He was apprehended after a brief pursuit.

Based on this evidence, Appellant was convicted of the above-described charges. Appellant was sentenced to ten to twenty years incarceration for rape and a consecutive term of five to ten years in jail for

unlawful contact with a minor. Concurrent sentences were imposed on the other two crimes at issue herein. Appellant filed a motion to modify his sentence. This appeal followed its denial. Appellant raises the following issues on appeal:

A. Did the trial court err when finding that Appellant's waiver of the right to trial by jury was knowing, voluntary, and intelligent?

B. Was the evidence sufficient to sustain any of the guilty verdicts entered by the trial court?

C. Were the guilty verdicts entered by the trial court, against the great weight of the evidence where the trial court did not provide findings of fact to demonstrate that the court's verdicts were based on a foundation of reason and not caprice or partiality?

D. Did the trial court . . . abuse its discretion in imposing an excessive sentence?

Appellant's brief at 5.

Since Appellant would be entitled to discharge rather than a new trial if he prevails in his sufficiency challenges, we address his second issue at the outset.[1] *See Commonwealth v. Nypaver*, 69 A.3d 708 (Pa.Super. 2013). We review a sufficiency argument pursuant to the following principles:

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying

_____

[1] We reject the Commonwealth's assertion that his sufficiency challenges were waived. Appellant included a challenge to the sufficiency of the evidence in his Pa.R.A.P. 1925(b) statement, and the trial court addressed the sufficiency of the evidence supporting the verdict.

the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Slocum*, 86 A.3d 272, 275 (Pa.Super. 2014) (citation omitted).

Appellant was convicted of rape by forcible compulsion. A person commits that offense if he engages in "sexual intercourse with a complainant [b]y forcible compulsion." 18 Pa.C.S. § 3121(a)(1). Forcible compulsion is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101. Appellant does not contest that A.H.'s testimony established that he inserted his penis into her vagina by force. He challenges that conviction by maintaining that A.H. "was not being truthful[.]" Appellant's brief at 21. Appellant likewise concedes that the elements of unlawful contact with a minor were established

by the Commonwealth.[2]  Appellant's brief at 23.  To challenge this conviction, he again levels an attack on the victim's credibility.  He notes inconsistencies between A.H.'s trial and preliminary hearing testimony about the bedroom in which she was attacked, the number of bedrooms in the house, and whether or not she called her mother following the attack.

Thus, Appellant's attacks on the sufficiency of the evidence supporting the rape and unlawful contact offenses are actually challenges to the weight rather than sufficiency of the evidence.  ***Commonwealth v. W.H.M., Jr.***, 932 A.2d 155, 160 (Pa.Super. 2007) (defendant's position that victim's version of events was not worthy of belief related to "weight, not sufficiency, of the evidence").  Likewise, inconsistencies between the witness's trial and preliminary hearing testimony relate to the weight of the evidence, which

_____

[2]  The offense of unlawful contact with a minor is outlined in 18 Pa.C.S. § 6318(a), which provides in pertinent part:

> **(a) Offense defined.--**A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> > (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S. § 6318(a)(1). Rape is an offense set forth in chapter 31 of the Crimes Code.

also is for the factfinder to determine. ***Commonwealth v. Stays***, 70 A.3d 1256 (Pa.Super. 2013).

Appellant's position as to his rape and unlawful contact convictions fails since it was solely within the province of the trial court to determine A.H.'s credibility. ***Commonwealth v. Page***, 59 A.3d 1118, 1130 (Pa.Super. 2013) ("A determination of credibility lies solely within the province of the factfinder.") ***Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa.Super. 2006) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. . . . It is not for this Court to overturn the credibility determinations of the fact-finder.").

Appellant also suggests that "the physical evidence did not support complainant's allegations." Appellant's brief at 21, 22. Initially, we observe that Appellant is mistaken since the victim had two lacerations on her labia when she was examined following the incident. While Appellant makes an obtuse argument that the Commonwealth did not prove that the lacerations were caused by an adult male penis, this position is a *non sequitur*. The lacerations were indicative of an assault on the victim's vaginal area and supported her allegations.

Secondarily, we note that the physical evidence neither supported nor undermined A.H.'s testimony. The results of the rape kit were not available since the kit was lost, and there was no other DNA testing conducted. The

victim's clothing was examined but did not have any residue of a bodily fluid or a hair that could be tested, which was consistent with A.H.'s testimony that Appellant pulled her pajama bottoms down to her ankles before she was raped.

Finally, we observe that it is well established that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." *Commonwealth v. Andrulewicz*, 911 A.2d 162, 166 (Pa.Super. 2006) (quoting *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006)). Thus, the fact that there was no physical evidence, other than the lacerations, to support A.H.'s testimony does not render the evidence insufficient to support the rape and indecent assault convictions.

Appellant next challenges his unlawful restraint conviction.[3] A person commits the crime of unlawful restraint if he "restrains another unlawfully in circumstances exposing him to risk of serious bodily injury." 18 Pa.C.S. § 2902(a)(1), (b)(1). In connection with this offense, Appellant maintains that the record failed to establish that A.H. sustained serious bodily injury after being forcibly raped. As noted by the Commonwealth, Appellant

_____

[3] Appellant raises some of the same arguments with respect to the unlawful restraint and child endangerment convictions as he did regarding the rape and unlawful contact offenses. Our resolution of those positions as to the rape and unlawful contact crimes applies with equal force to any identical position that Appellant raises to the unlawful restraint or child endangerment charges.

misconstrues the elements of this crime. The victim does not have to be seriously injured to support an unlawful restraint conviction; rather, the perpetrator must expose the victim to a **risk** of serious bodily injury.

In ***Commonwealth v. Byers***, 502 A.2d 1324 (Pa.Super. 1986), we noted that unlawful restraint is committed when a defendant restrains another and exposes the victim to a risk of serious bodily injury. We continued: "Clearly forcible rape presents the possibility of serious bodily injury to the victim." ***Id***. at 1331. We more specifically delineated in ***Commonwealth v. Kerrigan***, 920 A.2d 190 (Pa.Super. 2007), that a victim of unlawful intercourse is exposed to a risk of numerous venereal diseases as well as pregnancy. Hence, we reject Appellant's argument that he did not expose A.H. to a risk of serious bodily injury when he forcibly raped the victim.

Appellant also assails his child endangerment conviction. The elements of that offense are set forth in 18 Pa.C.S. § 4304 (a)(1): "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." Herein, Appellant suggests that the evidence did not "demonstrate the Appellant was supervising or otherwise caring for the complainant." Appellant's brief at 26.

We disagree. The victim was thirteen years old, and the offense occurred while she was staying overnight in Appellant's residence. The evidence was that Appellant evicted the only other adult in the home, Monica, and refused to allow Monica to take her sister. Hence, the evidence was sufficient to establish that Appellant was the adult in charge and was supervising A.H. when he raped her. *See Commonwealth v. Trippett*, 932 A.2d 188, 195 (Pa.Super. 2007).

We now address Appellant's first position, which is that he did not properly waive his right to a jury trial. Pa.R.Crim.P. 620 provides:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

The three fundamentals of a jury trial are "(a) the jury would be chosen from members of the community thereby producing a jury of his peers; (b) any verdict rendered by a jury must be unanimous, that is, all twelve jurors must agree before they can return a verdict of guilty; and (c) he would be permitted to participate in the selection of the jury." *Commonwealth v. Mallory*, 941 A.2d 686, 690 (Pa. 2008).

The colloquy conducted by the trial court under Pa.R.Crim.P. 620 does **not** have to include an on-the-record colloquy concerning the fundamentals

of a trial by jury. ***Mallory***, ***supra***. A written colloquy will suffice. ***Id***.

Herein, Appellant signed an extensive written document providing a detailed explanation of all the rights that he was waiving by proceeding to a non-jury trial. That document encompassed the three concepts in question. Additionally, Appellant specifically signed yes to the following paragraph:

> Do you understand that if you are tried by a jury you cannot be convicted unless all twelve jurors are convinced beyond a reasonable doubt that you are guilty? This is because a jury verdict is required by law to be unanimous which means that all twelve jurors must agree on the verdict, thus if all twelve vote "guilty," the verdict is "guilty" and if all twelve vote "not guilty" the verdict is "not guilty".

Written Jury Trial Waiver Colloquy, 5/24/11, at ¶ 35.

The written waiver was supplemented by an oral colloquy conducted by defense counsel in front of the trial judge that actually delineated two of the three fundamental rights involved in a jury trial.

> THE COURT: I have in front of me a written colloquy waiver form that has been completed, signed by your client. Would you do a brief oral colloquy referencing this form that you went over with him attached.
>
> MR. GAY [defense counsel]: Mr. Williams, you signed a form indicating to the Court that you're aware of your right to a jury trial, that you're choosing today to proceed by way of nonjury trial and have the Judge decide this case. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> MR. GAY: Did you and I discuss that prior to you appearing here today?
>
> THE DEFENDANT: Yes.

MR. GAY: Well, in order for someone to give up their right to a jury trial, of course, they need to be informed exactly what is involved in a jury trial, and so I'm going to go over some of the things on that form and ask, first of all, did you and I go over that form?

THE DEFENDANT: Yes.

MR. GAY: And did you place your initials on each page of this form and sign on the fourth page?

THE DEFENDANT: Yes.

MR. GAY: Now, if I were to ask each one of those questions that were on that form to you again, would your answers be the same?

THE DEFENDANT: Yes.

MR. GAY: Now, you understand that you do have a constitutionally guaranteed right to a jury trial?

THE DEFENDANT: Yes.

MR. GAY: That's guaranteed by [the] federal Constitution as well as [the] Pennsylvania Constitution; you understand that?

THE DEFENDANT: Yes.

MR. GAY: If we were to proceed by way of jury trial, we would bring approximately 40 people selected at random into this courtroom, and you and I and the District Attorney would go through those people to pick 12 people plus two alternates to be on the jury; you understand that?

THE DEFENDANT: Yes.

MR. GAY: You understand that the reason that you would have the two alternates is just in case one of the original 12 jurors was unable to sit for the duration of the trial, then we would have one of those alternates fill in for them, understand?

THE DEFENDANT: Yes.

MR. GAY: During the jury selection process, do you understand that you would have an unlimited number of strikes for what we call cause, if you could prove someone could not be fair in this particular case?

THE DEFENDANT: Yes.

MR. GAY: You also understand that you also have seven peremptory [strikes] that you can remove prospective jurors from the jury panel if you're not comfortable with them as a juror, but the Court has decided that they could be fair; you understand?

THE DEFENDANT: Yes.

MR. GAY: And you understand that you could use those peremptory challenges as long as you're not discriminating against someone on the basis of race, religion, national [origin.]

MR. GAY: Have you ever been diagnosed with a mental illness of any sort?

THE DEFENDANT: No.

MR. GAY: Are you taking any medication today?

THE DEFENDANT: No.

MR. GAY: I know this is a silly question, but are you under the influence of any alcohol or drugs as we're here in court today?

THE DEFENDANT: No.

MR. GAY: So do you understand everything that I have explained to you so far?

THE DEFENDANT: Yes.

MR. GAY: Any questions for either me, the District Attorney or Judge Trent?

THE DEFENDANT: No.

THE COURT: All right. I'm satisfied that the waiver is knowing, intentional and voluntary.

N.T. Trial, 5/24/11, at 6-11.

Thus, the only fundamental right not encompassed by the oral colloquy was that a jury verdict must be unanimous. Appellant's allegation is that his jury-trial waiver was defective in that trial counsel, during the oral colloquy, forgot to inform Appellant that a jury verdict must be unanimous. However, that omission was vitiated by the fact that Appellant was told about that concept in the written colloquy. **Commonwealth v. Smith**, 450 A.2d 973, 974 (Pa. 1982) ("[A]lthough the [oral] colloquy did not include an explanation of the unanimity and defendant-participation requirements [for a jury trial], the written form signed by respondent, his counsel, and the court states that respondent was indeed fully aware of these requirements. This form must be accorded prima facie validity."). Hence, no relief is due.

Appellant also raises a challenge to the weight of the evidence. We note that, contrary to the Commonwealth's position, this challenge was preserved since, after he was convicted and prior to sentencing, Appellant filed a motion for extraordinary relief raising the weight issue. Pa.R.Crim.P. 607 ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion.").

Our standard of review in this context is extremely limited and well-ensconced:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *[Commonwealth v.] Widmer*, 744 A.2d [745,] 751–52 [Pa. 2000]; *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 320, 744 A.2d at 752. It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Widmer*, 744 A.2d at 753.

- 15 -

*Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa.Super. 2014) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013)).

Appellant's specific weight claim is:

The Trial Court in rendering its verdict of guilt at the time of trial, did not issue any findings of fact, or conclusions of law that would permit a reviewing court to adequately determine whether the verdict was based on a foundation of reason or whether it was based on prejudice, personal motivations, caprice or arbitrary actions.

Appellant's brief at 28.

The fundamental flaw in this position is that there is no legal requirement that a trial court, acting as factfinder in a criminal proceeding, issue findings of fact and conclusions of law. Identical to a jury, the trial judge in a criminal proceeding merely issues a general verdict of guilt as to each offense charged against the defendant.

Herein, the trial court "found the complainant's testimony describing the sexual attack to be credible." Trial Court Opinion, 11/13/13, at 6. Appellant's weight argument largely rests on his testimony, which the court did not find "persuasive or credible." *Id*. As outlined above, the trial judge, as factfinder was the sole arbiter of A.H.'s credulity as well as that of Appellant. *Page*, *supra* at 1130 ("A determination of credibility lies solely within the province of the factfinder."); *Blackham*, *supra* at 320 (The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. . . . It is not for this Court to overturn the credibility

determinations of the fact-finder."). Given its credibility determinations in this case, we cannot find that the trial court erred in rejecting Appellant's weight claim.

Appellant also maintains that the convictions are in contradiction to the physical evidence. We have analyzed and rejected this position in connection with the sufficiency positions. Not only was there physical evidence to support the victim's claims, in the form of vaginal area lacerations, there was no physical proof to controvert it. The physical evidence neither proved nor disproved the allegations herein.

Appellant's final challenge is to the discretionary aspects of the sentence imposed. We have articulated on numerous occasions that:

> Before this Court may reach the merits of a challenge to the discretionary aspects of a sentence, we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence *see* Pa.R.A.P. 2119(f); and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. If the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa.Super. 2013) (citation omitted).

The appeal is timely. Appellant maintained in his post-sentence motion that his sentence was excessive "under the circumstances" and that the court "erred in sentencing the defendant to consecutive sentences."

- 17 -

Motion for Reconsideration and/or Modification of Sentence, 7/20/14, at ¶¶ 5, 7. Appellant's Pa.R.A.P. 1925(b) statement averred the following, "The court sentenced [Appellant] to a sentencing range above the aggregate[d] range with no consideration for the mitigation [evidence] presented by Sentencing counsel and this Court's sentence of fifteen to thirty year's imprisonment was excessive." Pa.R.A.P. 1925(b) Statement, 10/18/13, at ¶ 11.

Appellant's brief contains a Pa.R.A.P. 2119(f) statement of reasons for allowance of appeal. Appellant's brief at 18. Appellant's Pa.R.A.P. 2119(f) statement, however, recites incorrect facts. He alleges that his prior record score was three, and that "a mandatory minimum sentence applied to Appellant's conviction" for rape by forcible compulsion and the mandatory minimum was "a sufficient sentence absence any showing by either the Commonwealth or the trial court the need for an aggregated sentence." Appellant's brief at 18. In the body of his brief, Appellant at least corrects the error regarding his prior score. Appellant's brief at 30. ("appellant's prior record score of one, (1) was based in part on two prior convictions for simple assault and one prior conviction for REAP"). However, he again repeats the incorrect statement that the "conviction for Rape, with a guilty finding of forcible compulsion under the statutes mandated imposition of a mandatory minimum sentence ten, (10) to twenty, (20) years." *Id*.

We are aware of no mandatory minimum sentence for rape by forcible compulsion, and § 3121 contains none. The outlined sentence of ten to twenty years imprisonment is not a mandatory minimum sentence; rather, it is the maximum sentence that can be imposed for rape by forcible compulsion. *See* 18 Pa.C.S. § 3121(a)(1) (rape by forcible compulsion is a first-degree felony); 18 Pa.C.S. § 1103(1) (maximum sentence for a first-degree felony is twenty years in jail); 42 Pa.C.S. § 9756(b)(1) ("The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.").

The record indicates the following. Appellant's sentence for rape by forcible compulsion resulted from imposition of a sentence that was above the guidelines and his consecutive sentence of five to ten years for unlawful contact was within the standard range. The sentences on the unlawful restraint and child endangerments offenses were imposed concurrently. The sentencing court had the benefit of a pre-sentence report and mental health evaluation. With Appellant's prior record score of one, the aggravated range of the guidelines called for a minimum sentence of seven years. The sentencing court decided to exceed the guidelines on Appellant's rape conviction due to "Appellant's questionable rehabilitative potential, lack of remorse, and his dangerous propensity[.]" Trial Court Opinion, 11/13/13, at 11. The sentence imposed on the unlawful contact conviction was within the

standard range since the unlawful contact charge was also graded as a first-degree felony. 18 Pa.C.S. § 6318(b)(1).

The trial court addressed the allegation raised in the Pa.R.A.P. 1925(b) statement, which was that the sentence on rape exceeded the guidelines ranges, was excessive, and was imposed without consideration of mitigating evidence. The court reported that the claim that it did not consider mitigation evidence was "patently false. The court certainly appreciated the evidence presented by the defense, including the testimony of numerous witnesses." Trial Court Opinion, 11/13/13, at 11-12. It noted that it "adequately explained its reasons for deviating from the guidelines." *Id*. at 12.

On appeal, Appellant does not aver that the court failed to justify its decision to deviate from the guidelines. Rather, it is clear that his sole challenge on appeal is to the fact that the sentence for unlawful contact was imposed consecutively to the sentence for rape. Appellant's brief at 29-31. He suggests that the fifteen to thirty year sentence was manifestly excessive since the ten to twenty year term for rape was sufficient for the crimes in question. Appellant's brief at 30. While Appellant did preserve a challenge to the consecutive nature of the sentence in his post-sentence motion, it is not contained in the Pa.R.A.P. 1925(b) statement. Even if the present sentencing issue had been contained in that statement, it would not present a substantial question permitting appellate review. We have observed that

"imposition of consecutive rather than concurrent sentences rests within the trial court's discretion." ***Commonwealth v. Harvard***, 64 A.3d 690, 703 (Pa.Super. 2013). "Generally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." ***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 598 (Pa.Super. 2010).

A challenge to the court's decision to sentence consecutively will raise a substantial question only if the aggregate sentence "appears upon its face to be an excessive level in light of the criminal conduct at issue in the case." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1273 (Pa.Super. 2013) (citations omitted). Herein, Appellant forcibly raped a thirteen-year old child while she was under his care and then threatened to kill her and her family if she reported the crime. In light of the criminal conduct at issue herein, we cannot conclude that the aggregate sentence of fifteen to thirty years is excessive, on its face, and we find that Appellant failed to raise a substantial question as to the appropriateness of the sentence imposed. ***Commonwealth v. Mastromarino***, 2 A.3d 581 (Pa.Super. 2010); ***Gonzalez-Dejusus***, ***supra***; ***cf. Dodge***, ***supra*** (substantial question was raised where aggregate sentence of forty years, seven months to eighty-one years and two months incarceration resulted from imposition of consecutive sentences on victimless property crimes).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/28/2014</u>