J-S66004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDRE LAMAR DAVIS | |
| Appellant | No. 1069 WDA 2014 |

Appeal from the Judgment of Sentence June 4, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003840-2012

BEFORE:  OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 12, 2016**

Appellant, Andre Lamar Davis, appeals from the aggregate judgment of sentence of life imprisonment plus 20 to 40 years in prison, entered on June 4, 2014, after a jury convicted him of two counts of first degree murder, one count of attempted murder, and one count of aggravated assault.[1]  We affirm.

The trial court recited the factual background of this case as follows:

On March 12, 2012, [Appellant] spent the day hanging out with friends that he had known for years, Andre Frazier and Valdez Lanauze.  At some point during that afternoon, the men called [Mr. Lanauze's] mother, Karen Lanauze, for a ride to the "Quick Cash" store because Andre Frazier needed to cash a check.  Ms. Lanauze drove them to the store, and afterwards the group drove to Giant Eagle because Ms. Lanauze needed to pick up a few groceries.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a), and 2702(a), respectively.

*Retired Senior Judge assigned to the Superior Court.

On their way to Giant Eagle, [Appellant], also known as "Big Dre" got into a very loud, heated argument with Andre Frazier, who is also known as "Little Dre." They were arguing because [Appellant] wanted Mr. Frazier to help him commit a robbery, and Mr. Frazier did not want to get involved. Although they were told to calm down, they were still fighting in the car when Ms. Lanauze finished her grocery trip. When she returned to the vehicle, [Appellant] was standing "outside of the car on the driver's seat side" screaming at [Mr.] Frazier as he was "hitting and beating his chest." Ms. Lanauze told [Appellant] to get back in the car, and she dropped the three men off at the BP gas station down the street.

Upon being dropped off at the gas station, [Mr.] Frazier separated from the group and went his own way. [Appellant] and Mr. Lanauze went to another friend's house, where they remained until the late evening. After they left the house, the two men walked home together and then separated when Mr. Lanauze arrived at his house. However, as he was walking up to his porch, Mr. Lanauze reached into his pocket and realized that he had enough money to buy a small quantity of marijuana for a nightcap. He called his friend Manning Proctor and told him that he was coming over to buy some weed. He then caught up with [Appellant], and the two men walked over to Manning Proctor's house together.

[Appellant] and Mr. Lanauze arrived at [Manning Proctor's] house at approximately 12:30 a.m., and they found [Mr.] Frazier . . . [lying] on the couch in the living room. Mr. Frazier often [stayed] with Manning Proctor, and [Manning Proctor's] mother, Angela Proctor, so his presence at their residence was not surprising. Mr. Lanauze walked into the apartment, gave Mr. Frazier a handshake, then walked back to Manning Proctor's bedroom to make his purchase. Mr. Lanauze was in the back bedroom with Manning Proctor when they heard two gunshots. The men ran into the living room, where they were confronted with a gunshot fired in their direction. Mr. Lanauze ducked and ran out of the house as soon as he saw the light from the muzzle. Before he ran away, [Mr.] Lanauze saw [Appellant] holding a gun [and] standing over [Mr.] Frazier; he also saw [Appellant] swing the gun over and point it at Manning Proctor. Mr. Lanauze ran down the street and called his mother to come pick him up.

- 2 -

When authorities responded to the scene, they found Manning Proctor lying on the floor, with a gunshot wound to his left chest. Although he was seriously injured, he was coherent enough to tell the officer, three separate times, that "Dre" shot him. Manning Proctor was transported to the hospital, where he was pronounced dead later that morning. Authorities found his mother, Angela Proctor, lying dead on the floor of a bedroom, and they discovered [Mr.] Frazier wounded, lying on a bed in the same bedroom where Angela Proctor's body was found. Although he was shot three [] times from close range, Mr. Frazier survived the shooting and had even managed to call 911 after being shot.

[Appellant] was questioned by the authorities on March 14, 2012, after his mother called the police to inform them of his involvement in the shootings. He was arrested and charged with the murders of Manning and Angela Proctor, as well as the shooting of [Mr.] Frazier. The arrest was made after Mr. Lanauze told the police that [Appellant] was the shooter. After he was confronted with Mr. Lanauze's statement and the other evidence against him, [Appellant] told the officers that he wanted to "tell the truth about what happened." In a recorded statement, [Appellant] confessed to the shootings. He said that he was enraged after an argument with Mr. Frazier, that he "snapped," and that he shot the victims because they were charging at him. He told the officers that he had hid[den] the firearm behind an abandoned house. He was able to direct investigators to the specific location of the gun, where it was successfully retrieved.

Trial Court Opinion, 2/3/15, at 3-6 (citations to notes of testimony omitted).

Following Appellant's jury trial, the trial court, on June 4, 2014, sentenced Appellant to mandatory life imprisonment for the first-degree murder convictions, plus a consecutive term of 20 to 40 years' of imprisonment for the attempted murder conviction, with no further penalty for the aggravated assault conviction. Appellant filed a timely notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents a single issue for our review:

Did the [trial] court err in permitting the statement of Andre Frazier to be read into evidence after Mr. Frazier had been dismissed as a witness, violating [] Appellant's right to confront his witnesses and [the] rules of evidence pertaining to hearsay?

Appellant's Brief at 5.

It is uncontroverted that when Mr. Frazier testified at Appellant's trial, he "contradicted the statements that he made to police at the hospital on March 15, 2012[.]" Trial Court Opinion, 2/3/15, at 13. The trial court explained:

Mr. Frazier immediately provided a statement to the police within two (2) days of the incident; Detective Miller and his partner interviewed Mr. Frazier on March 15, 2012, while he was still at the hospital recovering from his injuries. Mr. Frazier was "very cooperative" with the police at that time because he was motivated to "do what was right by the Proctor Family." Based on Mr. Frazier's report of the incident, the officers put together a police report and asked him if he would be willing to record his statement. Mr. Frazier declined to have his statement recorded, so the officers memorialized his oral statement into a written document and asked him to read it in order to ensure that the facts contained therein were accurate. Mr. Frazier reviewed the statement, and he signed it in the presence of Detective Miller after he confirmed that it was factually accurate. Mr. Frazier's statement, in essence, confirmed that [Appellant] was angry with him because he had refused to help [Appellant] commit a robbery and that [Appellant] began shooting at him, and everyone else at the Proctor residence, without any provocation.

Although Mr. Frazier was very cooperative at the time of the incident, he [] changed his tone dramatically by the time of trial. Mr. Frazier took the stand and claimed not to remember anything, including the length of time that he had been friends with [Appellant]. While it is true that Mr. Frazier repeatedly testified that he did not recall any details from the incident, there were several instances where he outright denied his

previous statements. For example, when asked whether he told the police that he had an "uneasy feeling about [Appellant] being in the [Proctor] house" on the night of the incident, Mr. Frazier replied "no." The prosecutor then asked: "you are saying you never told the police that?" and Mr. Frazier responded "nope . . . I ain't told them nothing." When asked whether he observed [Appellant] shoot at him, Mr. Frazier initially replied that he did not remember, but when the prosecutor said "so [Appellant] may have [shot at you], you are not sure about it," Mr. Frazier firmly responded "No, he didn't." Later in his testimony, he was directly asked whether he had told the officers that [Appellant] was the person responsible for shooting him and the Proctor family, and Mr. Frazier stated "no."

*Id.* at 13 (citations to notes of testimony omitted).

Based on the foregoing, the trial court determined that Mr. Frazier's "statements that he made to police at the hospital on March 15, 2012, and his contradictory testimony opened the door for the introduction of his out-of-court statement as a prior inconsistent statement under Pa.R.Evid. 803.1." *Id.*

On appeal, the crux of Appellant's evidentiary claim relative to the admission of Mr. Frazier's signed statement is that "it is the *timing* of the Commonwealth's offer of the statement that should [have made] it inadmissible at [Appellant's] trial." Appellant's Brief at 12 (italics in original). Appellant emphasizes, "[t]he Commonwealth only discussed the content of Mr. Frazier's statement to police *after* [Mr.] Frazier had been dismissed as a witness at trial and left the courthouse." *Id.* Appellant avers that the signed statement was inadmissible because Appellant was prevented from cross-examining Mr. Frazier "about both the circumstances

- 5 -

surrounding the statement and the particulars of the statement itself." ***Id.*** at 11.

We initially recognize that a trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling on an evidentiary issue will be reversed only if the trial court abused its discretion. ***See, e.g., Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super. 2013), *reargument denied* (July 11, 2013), *appeal denied*, 80 A.3d 775 (Pa. 2013). A ruling admitting evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." ***Id.***

Here, Appellant argues that when introduced at trial, Mr. Frazier's signed statement constituted inadmissible hearsay because Mr. Frazier had been dismissed as a witness, left the courthouse, and could no longer be cross-examined about the inconsistency between his statement and his trial testimony.

The trial court disagreed and concluded that the statement was admissible as a prior inconsistent statement under Pa.R.E. 803.1, relying on ***Commonwealth v. Stays***, 70 A.3d 1256 (Pa. Super. 2013) and stating that "the fact that defense counsel chose to forego cross-examination of Mr. Frazier does not change the analysis because the question of admissibility does not center on whether the declarant is actually cross-examined on the statement, but whether an opportunity for cross-examination existed." Trial Court Opinion, 2/3/15, at 14.

Appellant counters that **Stays** is distinguishable because "although the defense had the opportunity to cross-examine [Mr.] Frazier at trial, his prior inconsistent statements had not been placed into evidence at that time." Appellant's Brief at 20. The trial court rebutted this assertion as follows:

> [T]he fact that Mr. Frazier's statement was not admitted into evidence until after his testimony was complete is of no consequence. The record clearly indicates that the defense had "full knowledge" of Mr. Frazier's witness statement prior to the time of trial. Because the defense was fully aware of the nature of Mr. Frazier's statement, there was ample opportunity to question Mr. Frazier about his statement while he was still subject to cross-examination. The fact that defense counsel chose to forego cross-examination of Mr. Frazier does not change the analysis because the question of admissibility does not center on whether the declarant is actually cross-examined on the statement, but whether an opportunity for cross-examination existed. **See Stays, supra**, at 1262 ("Significantly, it is not imperative that the defendant actually cross-examine the witness; if the defendant had an adequate opportunity to do so with full knowledge of the inconsistent statement, the mandate of Rule 803.1 is satisfied."). Such an opportunity existed in this case as Mr. Frazier was present at trial and was available for cross-examination, and his statement was thus properly admitted under Rule 803.1. Because Mr. Frazier's statement was properly admitted as a prior inconsistent statement, [Appellant's] confrontation clause argument must fail. **See** [**Commonwealth v. Hanible,** 30 A.3d 426, 444 (Pa. 2011)] ("It is well-settled that admitting a declarant's prior inconsistent statement does not violate the Confrontation Clause of the Sixth Amendment when the declarant, himself, testifies as a witness at trial and is subject to cross-examination.").

Trial Court Opinion, 2/3/15, at 14-15 (citations to notes of testimony omitted). Upon review, we agree with the trial court.

Our Rules of Evidence provide, in pertinent part, as follows:

> **Rule 803.1.** Hearsay exceptions; testimony of declarant necessary
>
> The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement:
>
> (1) Inconsistent statement of witness. A statement by a declarant that is inconsistent with the declarant's testimony, and (a) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement.

Pa.R.E. Rule 803.1(1).

> In *Stays*, we explained:
>
> [P]ursuant to [Pa.R.E. 803.1], inconsistent statements made by a witness prior to the proceeding at which he is then testifying are admissible as substantive evidence of the matters they assert so long as those statements, when given, were adopted by the witness in a signed writing or were verbatim contemporaneous recordings of oral statements. *See Commonwealth v. Presbury*, 665 A.2d 825, 831–832 (Pa. Super. 1995) (applying the same rule in review of a trial court's admission of prior inconsistent statements before formal adoption of the Pennsylvania Rules of Evidence). At the subsequent proceeding, the declarant of the original statement need not (indeed, cannot) adopt the original statement, as the statement's inconsistency with the declarant's testimony at the present hearing renders the former statement admissible. *See id.* In this instance, [the witness] declined to identify Stays at the preliminary hearing despite his earlier identification of the same man in the photo array, and disavowed the statement he had given earlier. He conceded only that his signature appeared on the last page of the statement, while offering contradictory answers concerning the appearance of his initials on the remaining pages. He denied having signed the photo array.
>
> Under those circumstances, Rule 803.1 rendered the signed photo array and Williams' written statement fully admissible at the preliminary hearing, so long as the witness had been available for cross-examination. *See* Pa.R.E. Rule 803.1(1).

**Significantly, it is not imperative that the defendant actually cross-examine the witness; if the defendant had an adequate opportunity to do so with full knowledge of the inconsistent statement, the mandate of Rule 803.1 is satisfied**. *Cf. Commonwealth v. Bazemore*, 614 A.2d 684, 686 (Pa. 1992) (recognizing the admissibility at trial of prior inconsistent preliminary hearing testimony on the proviso that the defendant must have knowledge of the existence of the inconsistency and an opportunity to cross-examine the witness about it). As the trial court recognized, Stays was offered the opportunity at the preliminary hearing to cross-examine Williams about the original statement and the photo array identification, as well as Williams' attempted recantation. At the very least, we would expect Stays to have explored Williams' motive for distancing himself from his earlier statements if only to dispel the inference of Stays' guilt should Williams' recantations be attributed to fear of retribution. Nevertheless, Stays declined to conduct any cross-examination at all. Consequently, Williams' preliminary hearing testimony rendered both his identification of Stays on the photo array and his signed statement to the Philadelphia Police admissible at the preliminary hearing as prior inconsistent statements.

After the preliminary hearing, but before trial, Williams became unavailable by reason of his murder. At trial, in the absence of his testimony, the Commonwealth introduced Williams' prior testimony from the preliminary hearing and the court reporter who had recorded that testimony read Williams' written police statement into the record. Stays contends that the trial court erred in admitting the prior testimony based on decisions suggesting that hearsay and extra-judicial identifications can be admitted only if the witness is present in court and subject to cross-examination.

Contrary to Stays' argument, we do not find Williams' prior testimony excludable under the hearsay rule. The cases on which Stays relies emphasize the importance of cross-examination as a vehicle to assure the trustworthiness of a witness's out of court statements and uphold the admission of such statements where the respective witnesses were available for cross-examination.

*Stays*, 70 A.3d at 1261-1263 (parallel case citations omitted; citations to notes of testimony omitted; emphasis added).

- 9 -

Although the witness in *Stays*, unlike Mr. Frazier, was unavailable to testify at trial, we agree with the trial court that *Stays* is authoritative in this case. The Commonwealth accurately stated:

> At the end of direct examination in the instant matter, shortly after the prosecutor had shown [Mr.] Frazier the statement and asked if he had signed it, [A]ppellant was given the opportunity to cross-examine [Mr.] Frazier regarding the statement, but he elected to ask no questions at all of this witness, despite having full knowledge of the statement prior to trial.

Commonwealth Brief at 21.

Our review of the record comports with the Commonwealth's account, as well as the trial court's rationale in allowing Mr. Frazier's signed statement to be read into the record by Detective Miller after Mr. Frazier had been excused from the trial. *See* N.T., 2/26/14-3/4/14, at 273-278.

Prior to the introduction of Mr. Frazier's statement, Mr. Frazier testified that Appellant was "his man" and "cool." *Id.* at 226. He answered "I don't remember" to a multitude of the Commonwealth's questions regarding whom he knew and what transpired on the night of the shooting. *Id.* at 225-248. For example, Mr. Frazier did not remember being interviewed by Detective Miller or even being at the hospital on March 15, 2012. *Id.* at 232. Mr. Frazier also asserted that he "got no answer" to several of the Commonwealth's questions. *See, e.g.*, *id*. at 235-236, 239-240. The Commonwealth presented Mr. Frazier with the written statement, and Mr. Frazier specifically testified that he did not sign it and did not "remember none of that." *Id.* at 244. When the Commonwealth was finished

questioning Mr. Frazier, and offered him for cross-examination, Appellant's attorney replied, "No further questions of the witness." *Id.* at 248. Furthermore, after Detective Miller testified, and read into the record Mr. Frazier's three-page signed statement, the trial court asked Appellant's attorney, "Any cross?" to which defense counsel replied, "No questions." *Id.* at 278.

Given the foregoing, Appellant had the "adequate opportunity" to cross-examine, *i.e.*, confront, both Mr. Frazier and Detective Miller, "with the full knowledge of the inconsistent statement." ***Stays, supra***. We therefore discern no abuse of discretion by the trial court in determining that Mr. Frazier's recorded statement was admissible pursuant to Pa.R.E. 803.1, and thus affirm the June 4, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2016