**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Duane STAYS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 30, 2012.
Filed July 08, 2013.

Samuel Alboum, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, J., MUNDY, J., and OTT, J.

OPINION BY BENDER, J.

This matter comes before the Court on remand from the Supreme Court of Pennsylvania following its *vacatur* of our prior decision, which affirmed the trial court's judgment of sentence. The Supreme Court based its order on our conclusion that Stays had failed to preserve his challenge under the Confrontation Clause of the Sixth Amendment. In view of the Supreme Court's direction, we now revisit that issue and restate our dispositions of Stays' other claims to conclusively resolve all issues raised in this case.

Duane Stays appeals the judgment of sentence imposed following his conviction of, among other things, Aggravated Assault, and Possession of Instruments of Crime (PIC), 18 Pa.C.S. §§ 2702(a), 907(a) (respectively). Stays contends that the trial court erred in admitting as substantive evidence prior statements by an eyewitness that were inconsistent with his subsequent testimony during the preliminary hearing, when the victim recanted his earlier statements identifying Stays as the assailant. Stays also contends that the evidence was not legally sufficient to establish his guilt of either of the foregoing offenses and that the verdict is opposed to the weight of the evidence. Upon consideration of the record in view of the Rules of Evidence, as well as applicable case law, we find Stays' claims devoid of merit. Accordingly, we affirm his judgment of sentence.

The trial court, The Honorable Rosalyn K. Robinson, summarized the facts and procedural history of this case as follows:

On the afternoon of June 22, 2008, two friends, Nasir Farlow and Ivan Williams, rode in Williams'[ ] car to the 1600 block of South Frazier Street in West Philadelphia to get some lunch. When they arrived at their destination, Farlow exited the car to go into the store. Without warning, three or four gunshots rang out and Farlow was shot twice, once in each leg. Williams drove Farlow to the hospital and was later questioned by police.

When police arrived on the scene, somebody told one of the officers that some neighborhood children had kicked shell casings into the sewer. When Detective Kenneth Flaville arrived on the scene at the 1600 block of South Frazier Street, the sewer grate was lifted and a .40 caliber shell casing was indeed found inside the sewer.

Detective Flaville then questioned Ivan Williams about the shooting. Although Williams initially claimed that he did not know who had shot Nasir Farlow, he had a sudden change of heart and divulged much information about the shooter. He claimed that he had initially lied because he was afraid of what might happen to him and his family. Williams told Detective Flaville that the shooter was named Wayne, also called "Homicide Wiz," and provided a physical description. Williams also said that Wayne and Farlow had a prior disagreement and told [D]etective Flaville where Wayne lived. Detective Flaville transcribed the entire interview and had Williams read over it to make sure that it was all correct. Williams then initialed each page and signed his name at the end. At this same interview, Williams also identified a photo of the current defendant, Duane Stays, as Wayne, circled the picture, and signed his initials.

Detective Flaville used this information to obtain a search warrant for the apartment that Ivan Williams had said Wayne lived in. Upon execution of that warrant, Duane Stays was found in the apartment. A safe was also found that included marijuana, money, and a Glock Model 27 handgun. The handgun was a .40 caliber handgun that was later matched to the shell casing found in the sewer at the crime scene. The police also recovered a pay stub with Duane Stays' name on it and the address of the apartment that he was found in.

At the preliminary hearing, Ivan Williams' testimony was vastly different than his statement to the police. Williams claimed that he did not know anybody in the courtroom, that he had not seen anybody at the time of the shooting, and that he did not sign the photo array that featured a circled picture of Duane Stays. Duane Stays and his defense counsel were present at this hearing but declined to ask any questions on cross-examination.

Between the time of the preliminary hearing and trial, Ivan Williams was murdered.... At trial, the court reporter from the preliminary hearing read Ivan Williams'[ ] testimony from that hearing into the record. In addition, Detective Flaville read Williams'[ ] statement from the police interview at trial. Flaville also testified that Williams had reviewed and signed the statement in its entirety.

Trial Court Opinion, 7/7/11, at 1–3.

The Commonwealth also called a ballistics expert from the Philadelphia Police Department, Firearms Identification Unit, who offered an expert opinion that, without "any doubt," the shell casing recovered from the storm sewer at 1600 South Frazier Street had been fired from the Glock handgun found in Duane Stays' apartment. Stays offered no testimony on his own behalf and presented neither fact nor char-

acter witnesses. At the conclusion of the evidence, the jury found Stays guilty of both of the charges in question here. At sentencing, Judge Robinson imposed a term of ten to twenty years' incarceration for Aggravated Assault, to be followed by five to ten years' for Carrying a Firearm Without a License, and a concurrent term of one to two years' for PIC. With the aid of counsel, Stays filed a post-sentence motion which the court denied. Stays then filed this appeal, raising the following questions for our review:

1) Whether the trial court erred by admitting as substantive evidence a prior inconsistent statement, purportedly identifying the Defendant, made by a non-party declarant, who was unavailable to testify at trial?

2) Whether there was insufficient evidence as a matter of law to find the Defendant guilty beyond a reasonable doubt of the charges of Aggravated Assault and Possession of an Instrument of Crime?

3) Whether the admission into evidence of a prior inconsistent statement, purportedly identifying the Defendant, made by a non-party declarant who was unavailable to testify at trial violated Defendant's rights under the Confrontation Clause of the 6th Amendment to the United States Constitution?

4) Whether the trial court abused its discretion in denying the Defendant a new trial on the charges of Aggravated Assault and Possession of an Instrument of Crime when said verdicts were against the weight of the evidence?

Brief for Appellant at 7–8.

In his first and third questions, Stays challenges the trial court's admission of the former testimony of Ivan Williams from the preliminary hearing as well as the statement he gave to police, and the photo array that he signed, that identified Stays as the shooter. Although these questions present distinct legal issues, they derive from the same circumstances and implicate the admissibility of the same evidence. Accordingly, we shall address them in sequence.

In support of his first question, Stays contends that the trial court erred in admitting as substantive evidence Ivan Williams' transcribed statement to the Philadelphia Police identifying Stays as the shooter, as well as the photo array that Williams signed and dated on which he also circled Stays' photo. Stays argues that, when introduced at trial, the statements constituted hearsay evidence because, inasmuch as Williams was then dead, he could no longer be cross-examined about the discrepancy between those earlier statements and his attempted recantation at the preliminary hearing. Brief for Appellant at 15–16. Stays asserts accordingly that the statements lack any indicia of reliability and properly should have been excluded. *Id.* at 18 ("[W]hen either prior inconsistent statements or extra judicial identifications made by a non-party/eyewitness are to be introduced as substantive evidence at trial, the declarant must be present and available for cross-examination. Otherwise the statements sought to be introduced will be hearsay, having neither indicia of reliability nor guarantee of trustworthiness."). The trial court concluded that the statements were admissible as former testimony under Pa.R.E. 804(b) because Williams' testimony at the preliminary hearing had provided an adequate opportunity for cross-examination, following which his death allowed admission of the statements due to the unavailability of the witness. Trial Court Opinion, 7/7/11, at 3–4. We agree with the trial court's assessment. In view of the introduction of Williams' prior inconsistent statements at the preliminary hearing pursuant to Pa.R.E.

803.1, they were subsequently admissible at trial pursuant to Rule 804(b).

■ Our Rules of Evidence provide, in pertinent part, as follows:

**Rule 803.1. Hearsay exceptions; testimony of declarant necessary**

The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement:

(1) **Inconsistent statement of witness.** A statement by a declarant that is inconsistent with the declarant's testimony, and (a) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement.

Pa.R.E. Rule 803.1(1). Thus, pursuant to this rule, inconsistent statements made by a witness prior to the proceeding at which he is then testifying are admissible as substantive evidence of the matters they assert so long as those statements, when given, were adopted by the witness in a signed writing or were verbatim contemporaneous recordings of oral statements. *See Commonwealth v. Presbury,* 445 Pa.Super. 362, 665 A.2d 825, 831–32 (1995) (applying the same rule in review of a trial court's admission of prior inconsistent statements before formal adoption of the Pennsylvania Rules of Evidence). At the subsequent proceeding, the declarant of the original statement need not (indeed, cannot) adopt the original statement, as the statement's inconsistency with the declarant's testimony at the present hearing renders the former statement admissible. *See id.* In this instance, Williams declined to identify Stays at the preliminary hearing despite his earlier identification of the same man in the photo array, and disavowed the statement he had given earlier.

N.T., Preliminary Hearing, 9/23/08, at 5–7, 11–18. He conceded only that his signature appeared on the last page of the statement, while offering contradictory answers concerning the appearance of his initials on the remaining pages. *Id.* at 10–11. He denied having signed the photo array. *Id.* at 12.

■ Under those circumstances, Rule 803.1 rendered the signed photo array and Williams' written statement fully admissible at the preliminary hearing, so long as the witness had been available for cross-examination. *See* Pa.R.E. Rule 803.1(1). Significantly, it is not imperative that the defendant actually cross-examine the witness; if the defendant had an adequate opportunity to do so with full knowledge of the inconsistent statement, the mandate of Rule 803.1 is satisfied. *Cf. Commonwealth v. Bazemore,* 531 Pa. 582, 614 A.2d 684, 686 (1992) (recognizing the admissibility at trial of prior inconsistent preliminary hearing testimony on the proviso that the defendant must have knowledge of the existence of the inconsistency and an opportunity to cross-examine the witness about it). As the trial court recognized, Stays was offered the opportunity at the preliminary hearing to cross-examine Williams about the original statement and the photo array identification, as well as Williams' attempted recantation. N.T., Preliminary Hearing, 9/23/08, at 15. At the very least, we would expect Stays to have explored Williams' motive for distancing himself from his earlier statements if only to dispel the inference of Stays' guilt should Williams' recantations be attributed to fear of retribution. Nevertheless, Stays declined to conduct any cross-examination at all. *Id.* Consequently, Williams' preliminary hearing testimony rendered both his identification of Stays on the photo array and his signed statement to the Philadelphia Police admissible at the preliminary hearing as prior inconsistent statements. *See id.*

■ After the preliminary hearing, but before trial, Williams became unavailable by reason of his murder.[1,2] At trial, in the absence of his testimony, the Commonwealth introduced Williams' prior testimony from the preliminary hearing and the court reporter who had recorded that testimony read Williams' written police statement into the record. N.T., 3/9/10, at 73–76. Stays contends that the trial court erred in admitting the prior testimony based on decisions suggesting that hearsay and extra-judicial identifications can be admitted only if the witness is present in court and subject to cross-examination. Brief for Appellant at 14–16 (citing *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986); *Commonwealth v. Floyd*, 508 Pa. 393, 498 A.2d 816 (1985); *Commonwealth v. Doa*, 381 Pa.Super. 181, 553 A.2d 416 (1989)), 18 ("It is clear from the foregoing that when either prior inconsistent statements or extra-judicial identifications made by a non-party/eyewitness are to be introduced as substantive evidence at trial, the declarant must [be] present and available for cross-examination. Otherwise the statements sought to be introduced will be hearsay, having neither indicia of reliability not guarantee of trustworthiness.").

Contrary to Stays' argument, we do not find Williams' prior testimony excludable under the hearsay rule. The cases on which Stays relies emphasize the importance of cross-examination as a vehicle to assure the trustworthiness of a witness's out of court statements and uphold the admission of such statements where the respective witnesses were available for cross-examination. *See, e.g., Brady*, 507 A.2d at 71; *Doa*, 553 A.2d at 423–24. They do not address the issue that we

confront here of the extent to which prior inconsistent statements originally made out of court are admissible as substantive evidence at trial *when the declarant is specifically unavailable due to death.* That issue *is* addressed, however, by Pennsylvania Rule of Evidence 804, which makes such statements expressly admissible where, as here, they have been previously admitted in another proceeding in the same case, subject to cross-examination. Rule 804 provides, in pertinent part, as follows:

**Rule 804. Hearsay exceptions; declarant unavailable**

\* \* \* \*

**(b) Hearsay Exceptions.** The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \*

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an adequate opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Pa.R.E. 804(b)(1).

Upon review of Rule 804 and the cases that apply it, we find no impediment to the admission of Williams' preliminary hearing testimony as substantive evidence at trial. Clearly, Williams was unavailable within the meaning of the Rule. Moreover, Stays was specifically provided the opportunity at the preliminary hearing to cross-examine Williams but declined to ask even a

---

1. Not surprisingly, Pa.R.E. 804(a)(4) recognizes death as a cause of unavailability sufficient to render a declarant's former testimony admissible at a subsequent trial.

2. The record does not establish whether Stays was responsible for Williams' murder; therefore we proceed on the premise that he was not.

single question. N.T., Preliminary Hearing, 9/23/08, at 15 ("THE COURT: Cross. [STAYS' COUNSEL]: I have nothing for this witness."). Stays having conceded his right to cross-examination at the preliminary hearing despite an obvious motivation to carry it out, *see supra,* we find no constraint on the trial court's discretion such as to require exclusion of Stays' preliminary hearing testimony. Inconsistencies between that testimony and Williams' prior statements to the police, admissible pursuant to Rule 803.1, do not, as Stays suggests, undermine the reliability of the testimony sufficiently to defeat its admissibility. *See Commonwealth v. McCrae,* 574 Pa. 594, 832 A.2d 1026, 1035 (2003) ("Alleged prior inconsistencies-such as appellant identifies-are classic points affecting evidentiary weight and not admissibility. The weight to be accorded the testimony, of course, is for the jury."). We find Williams' former testimony at the preliminary hearing, as well as his signed statement and photo array, fully admissible as substantive evidence pursuant to Rules 803.1 and 804. *See also McCrae,* 832 A.2d at 1035. Consequently, the trial court did not err in so ruling, and Stays' assertion to the contrary does not offer grounds for relief.

■ In his third question, Stays also challenges the trial court's admission of Williams' former testimony, relying not on the Rules of Court but on the Confrontation Clause of the Sixth Amendment. We note, however, that Stays never presented a Confrontation Clause challenge in the trial court. Counsel's objection at trial to

admission of Williams' former testimony at trial was limited to hearsay, and our response is encompassed in the foregoing discussion.[3] Stays did not present a constitutional challenge to the evidence until he filed an amended Rule 1925(b) statement—after he had already filed his notice of appeal and divested the trial court of any jurisdiction to rule on the issue. Thus, Stays has failed to preserve his constitutional argument for our review. *See Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 891 (2010) ("This Court has consistently held that an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties. Where the parties fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte.* The rule is no different in the constitutional context.").

■ Nevertheless, even were we to dispose of the question on its merits, it would yield no basis for the relief Stays seeks. In support of his claim, Stays argues:

> In order to introduce Williams' statement into evidence at trial, and survive a *Confrontation Clause* objection, a prior opportunity to cross-examine Ivan Williams must have been provided to the defense. Both at trial and in its opinion the lower court erroneously ruled that the defense had such opportunity and, over defense objection permitted Williams' purported statement to be read into evidence. In reaching such a conclusion[,] the trial court simply ignored the record of the preliminary hearing.[4]

3. Contrary to Stays' suggestion, Brief for Appellant at 30–31, his counsel's objection to the admission of Williams' former testimony did not raise a Confrontation Clause challenge but relied exclusively on the hearsay rule. N.T., 3/9/10, 107 ("Well, the objection, it's either hearsay, speculation, because there's no way I can deal with it."); 112 ("With all

due respect, what you're doing is hearsay. If you want the statement read, ask the detective if he signed it in your presence. I think that establishes the same thing. Not that I want to try your case for you.").

4. The transcript that documents the Commonwealth's introduction of Williams' former tes-

Brief for Appellant at 30–31. Contrary to Stays' assertion, the transcript of the preliminary hearing establishes that he had an ample opportunity to cross-examine Williams, and should have been motivated to fully avail himself of it. Williams' importance to the case was overwhelming, as he was the only person to see the shooter—the victim himself, Nasir Farlow, testified that he had not seen anyone. The fact that Williams actually chose to recant at the hearing, by disavowing the statement he had given to the police on the day after the shooting, in no way nullifies the interest Stays had first, in testing the grounds for the recantation and, ultimately, in exploring any recollection Williams had of the event. Although we acknowledge that cross-examination may have proven ineffective at penetrating the witness's recantation, it may also have confused and discomfited him sufficiently to pry the truth from his lips. Yet Stays counsel, when asked if he wished to cross-examine the witness simply responded, "I have nothing for this witness." N.T., Preliminary Hearing, 9/23/08, at 15. Thus, rather than test the recantation, at least to protect his client from *future* recantation of the *current* recantation, Stays' counsel chose to allow it to stand, ostensibly as a matter of, evidentiary convenience.

■■■ We discern no reason to allow the decision of Stays' counsel, eschewing cross-examination, to control the admissibility of Williams's prior testimony. The decisions of our Courts are clear that the admissibility of former testimony and its ability to withstand Confrontation Clause challenges derives not from the actual conduct or content of cross-examination, *but from its availability. See Commonwealth v. Wholaver,* 605 Pa. 325, 989 A.2d 883, 904

(2010). Indeed, no less an authority than the United States Supreme Court has validated this limitation on application of the Confrontation Clause. That Court has held and reaffirmed that "there may be some justification for holding that the opportunity for cross-examination of a witness [at] a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable...." *California v. Green,* 399 U.S. 149, 165–66, 90 S.Ct. 1930, 26 L.Ed.2d 489 (quoting *Barber v. Page,* 390 U.S. 719, 725–726, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). Consistent with such pronouncements, the Supreme Court of Pennsylvania has recognized as well that the opportunity to cross-examine a witness, rather than its actual occurrence, fulfills the constitutional right of confrontation:

> Where the defendant has had the opportunity to cross-examine a witness at a preliminary hearing, probing into areas such as bias and testing the veracity of the testimony, cross-examination, and thus confrontation, within the meaning of the Sixth Amendment has been accomplished. This is particularly so in cases where, as here, the defendant was represented by the same counsel at the preliminary hearing and at trial.

*Wholaver,* 605 Pa. 325, 989 A.2d 883, 904 (2010). Thus, although our ruling on Stays' third question derives from his failure to preserve the issue for appellate review by appropriate objection and argument at trial, we note that were we to dispose of the claim on its merits we would find Stays' claim without legal merit.

■■■ In support of his second question, Stays contends that the evidence the Commonwealth adduced at trial was not legally sufficient to sustain his convictions

timony at trial was recorded March 9, 2010, and is erroneously labeled "Preliminary Hearing Volume I." In fact, the testimony recorded in that transcript was taken at the jury

trial. The transcript of the Preliminary Hearing does appear in the record, however, and is dated September 23, 2008.

of Aggravated Assault and PIC. As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super.2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001).

▮▮▮ The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa.Super.2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

In this case, Stays challenges his conviction for Aggravated Assault, defined by the Crimes Code as follows:

**§ 2702. Aggravated assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

* * * *

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S. § 2702.

▮▮ To sustain his challenge to his Aggravated Assault conviction, Stays argues that the Commonwealth produced no physical evidence "directly linking" him to the shooting, as the police recovered only one shell casing rather than the three or four that would have corresponded to the reports of witnesses who heard the gunshots. He argues, in addition, that Nasir Farlow never appeared to testify against him and that blood found on the street was never submitted for analysis.[5] Brief for Appel-

---

5. Concerning PIC, Stays presents only the most cursory argument, asserting that "it is impossible to conclude beyond a reasonable doubt that [the Glock handgun found in Stays' apartment] was used in the assault on Nasir Farlow." Brief for Appellant at 24. Unfortunately, Stays offers no additional analysis of the point and merely cites the statutory defini-

tion for Possession of an Instrument of Crime appearing at 18 Pa.C.S. § 908. *Id.* We find this argument markedly insufficient to offer grounds for relief or even to inform our consideration of the issue. We conclude accordingly that Stays' sufficiency challenge to his conviction of PIC is waived. *See Common-*

lant at 22–23.

■ We find Stays' arguments without merit, as they fail to recognize the role of circumstantial evidence in sustaining any conviction, and ignore the testimony and statements of the now-deceased Williams. As concerns Williams' statements, notwithstanding the witness's attempts at recantation during the preliminary hearing, he did identify Stays' picture in a photo array and did identify him as the perpetrator in an interview with a Philadelphia Police detective. Those statements, among other factors, provided probable cause for a warrant to issue for the search of Stays' apartment, where officers found the gun that had fired at least one shot at the scene of the shooting. Notwithstanding the inability of the police to find additional shell casings or their failure to test the blood found at the scene, the circumstantial evidence offered by the existing shell casing, fired by Stays' gun at the scene of the shooting, remains strong. Moreover, Nasir Farlow sustained a gunshot wound to each leg; such a consequence can hardly be described as happenstance or mere collateral damage from random gunfire. Thus, when coupled with Williams' initial statements identifying Stays as the shooter, the circumstantial evidence conveys a compelling narrative which, if accepted by the jury, was readily sufficient to sustain Stays' conviction of Aggravated Assault. Any suggestion concerning the effect of Williams' recantation or the absence of any testimony by Nasir Farlow amounts only to an attack on the weight of the evidence and not to its sufficiency. *See McCrae*, 832 A.2d at 1035. *See also Commonwealth v. Dougherty*, 580 Pa. 183, 860

A.2d 31, 36 (2004) (noting that appellant's assertion that there was "no 'credible' evidence" to sustain his conviction was a challenge to the weight of the evidence rather than its legal sufficiency). Accordingly, we find the evidence more than ample to sustain to Stays' conviction.

■ In support of his fourth question, Stays argues the trial court erred in refusing to award a new trial on the basis that the jury's verdict opposed the weight of the evidence. Brief for Appellant at 34–35. In ruling on a claim challenging evidentiary weight, the trial court must accord great deference to the jury's discretion to adjudge the credibility of witnesses and to determine whether their testimony, if believed, establishes the elements of the offenses charged. So long as that evidence is legally sufficient, the trial court may grant a new trial based on evidentiary weight only in the most limited of circumstances:

> The weight given to trial evidence is a choice for the factfinder. *Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa.Super.2007). If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1036 (2007).

*Commonwealth v. West*, 937 A.2d 516, 521 (Pa.Super.2007). As an appellate court, our standard of review is more attenuated still, as we may adjudge only the trial

wealth v. Hakala, 900 A.2d 404, 407 (Pa.Super.2006) (citation omitted) ("Although we might comb the record to assure that the elements of Hakala's convictions are established, absent some reasoned analysis from the appellant we decline to do so. As we

have admonished in prior decisions, '[i]t is not this Court's function or duty to become an advocate for the appellants.' Because Hakala fails to offer either analysis or case citation in support of the relief he seeks, we deem all of his questions waived.").

court's exercise of discretion in entertaining the defendant's challenge:

> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

*Id.* (citations omitted).

 Mindful of our standard of appellate review and its exceptionally narrow scope, we find no basis for relief. In response to Stays' post-sentence motion, the trial court examined the weight of the evidence and found no deficiency in the Commonwealth's case. Trial Court Opinion at 7/7/11, at 8. Following its review, the court noted specifically that the jury was free to believe the testimony of Ivan Williams, notwithstanding his attempt at recantation, and observed as well that the physical evidence corroborated Williams' testimony. *Id.* The court concluded accordingly that the verdict did not shock its sense of justice. Based on this record, we can conceive of no basis on which to question that assessment. Given the trial court's observation of the witnesses and its evaluation of the factors naturally bearing on their truthfulness, we find no abuse in the trial court's exercise of discretion. Accordingly, we find no basis for relief on Stays' challenge to the weight of the evidence supporting either of his convictions.

* Retired Senior Judge assigned to the Superior

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence **AFFIRMED.**