J-S25004-25

2025 PA 202

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                           :              PENNSYLVANIA
                                           :

            v.                                  :
                                           :
                                         :

DURRELL JOHNSON                 :
                                         :

           Appellant            :     No. 925 EDA 2024

Appeal from the Judgment of Sentence Entered May 30, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006499-2012

BEFORE: PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

OPINION BY PANELLA, P.J.E.:            **FILED SEPTEMBER 11, 2025**

Durrell Johnson, *pro se*,[1] appeals *nunc pro tunc* from the judgment of sentence imposed following his convictions of two counts each of attempted murder and aggravated assault, and one count each of carrying a firearm without a license, carrying a firearm in public in Philadelphia, and persons not to possess firearms. On appeal, Johnson challenges the trial court's admission of evidence at trial. After careful review, we affirm.

The trial court set forth the facts underlying Johnson's convictions as follows:

> Around 2:00 p.m. on February 21, 2012, Kevin Vancliff and his pregnant girlfriend, Michelle Paige, were walking in the area of

---

[1] On September 17, 2025, this Court issued an order directing the trial court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). On November 8, 2025, the trial court notified this Court that it had held the hearing and determined on the record that Johnson's waiver of appellate counsel is knowing, intelligent, and voluntary.

23rd and Latona Streets in Philadelphia. Nearby, Sakhadin Slomidze, a bricklayer, was working laying bricks. Suddenly, Durrell Johnson [] exited from a green Pontiac driven by his co-conspirator, Preston Worthem, pulled out a gun, and fired five times. The gunshots struck [] Vancliff in the back and [] Slomidze in the buttocks and the wrist. Once the shooting started, [] Vancliff pushed [] Paige down onto the ground and then ran away. [] Paige witnessed [Johnson] firing the gun and jumping into the green Pontiac, which then fled the scene. So terrified and traumatized was [] Paige, that she urinated on herself and went into false labor after giving police a statement and had to be rushed to the hospital.

[] Paige told police that she had known [Johnson] since she was twelve years old, and positively identified him from a police photo array as the man who shot [] Vancliff and [] Slomidze. [] Paige identified the co-conspirator as the man who was driving the green Pontiac. She also told police that she had seen both men in a green Pontiac about five minutes before the shooting. Police found five spent shell casings where the shooting took place. Further, a corner store near the shooting had a video camera which showed a green Pontiac matching the description given by [] Paige turning down Latona Street shortly before the shooting took place. On February 22, 2012, police stopped a green Pontiac containing both [Johnson] and his co-conspirator and subsequently arrested both men.

Trial Court Opinion, 8/13/24, at 1-2 (citations and footnotes omitted).

At a preliminary hearing held on May 31, 2012, Paige largely recanted her statement to the police during her sworn testimony. Johnson's counsel cross-examined Paige during which Paige insisted she did not see who was shooting because she was hiding behind a car. *See id.* at 24-25. Paige testified she saw Johnson earlier that day, but did not see him with a gun in his hand, or shooting that day. *See id.* at 25.

On March 19, 2013, a hearing was held on the Commonwealth's unavailability motion pursuant to which they sought to present to the jury the

notes of testimony from the preliminary hearing in which Paige recanted her prior statement to police, and the two photo arrays which were shown to Paige at the time of her initial statement, and which were entered into evidence at the preliminary hearing. The Commonwealth detailed their unsuccessful efforts to locate Paige and the court took extensive argument from all parties regarding whether those efforts were sufficient, whether or not defense counsel was given a proper opportunity to fully and fairly cross-examine Paige at the preliminary hearing, and about relevant case law.

On March 20, 2013, just prior to the start of trial, the court granted the Commonwealth's motion to permit Paige's preliminary hearing testimony, the two photo arrays, and Paige's prior statement to police. *See* N.T., Jury Trial, 3/20/13, at 6. The court simultaneously found the Commonwealth made a good faith effort to find Paige. *See id.* Further, the court found that pursuant to *Commonwealth v. Bazemore*, 614 A.2d 684 (Pa. 1992), the defense had a full and fair opportunity to cross-examine the unavailable witness. *See* N.T., Jury Trial, 3/20/13, at 7. Finally, the court found the confrontation rights of the defense were not violated, in line with the rationale from *Commonwealth v. Wholaver*, 989 A.2d 883 (Pa. 2010). *See id.* at 7.

The trial court summarized the subsequent procedural history as follows:

> On March 26, 2013, a jury [] found [Johnson] guilty of the charges of attempted murder (two counts), aggravated assault (two counts), carrying a firearm without a license, and carrying firearms on public streets or public property in Philadelphia. By

agreement, th[e trial c]ourt also found [Johnson] guilty of possession of a firearm by a prohibited person because the jury convicted him of weapon offenses. [Johnson] was found guilty on docket number CP-51-CR-0006498-2012 of attempted murder and aggravated assault for victim Kevin Vancliff, as well as violations of the Uniform Firearms Act. [Johnson] was also convicted of attempted murder and aggravated assault for victim Sakhadin Slomidze on docket number CP-51-CR-0006499-2012. On May 30, 2013, th[e trial c]ourt sentenced [Johnson] to consecutive terms of imprisonment of ten (10) to twenty (20) years incarceration for each attempted murder and five (5) to ten (10) years of incarceration for possession of a firearm by a prohibited person to run consecutive to the attempted murder sentence. The remaining sentences of four (4) to eight (8) years['] incarceration for carrying a firearm without a license and one (1) [to] two (2) years['] incarceration on carrying firearms in Philadelphia were to run concurrent with possession of a firearm by a prohibited person.

The total sentence equaled twenty-five (25) years to fifty (50) years['] incarceration, with the sentence for CP-51-CR-0006498-2012 totaling nineteen (19) to thirty-eight (38) years['] incarceration. One of the two above-referenced attempted murder and aggravated assault counts were on CP-51-CR-0006499-2012 - the matter presently on appeal. The sentence for CP-51-CR-0006499-2012 equaled ten (10) to twenty (20) years['] incarceration. During his trial and sentencing, [Johnson] was represented by Greg Prosmushkin, Esq.

At the conclusion of [Johnson]'s sentencing hearing, Mr. Prosmushkin asked th[e trial c]ourt to remove him as counsel and appoint new counsel for purposes of appeal, as [Johnson] was alleging that Mr. Prosmushkin was ineffective in his handling of [Johnson]'s case. Th[e trial c]ourt granted Mr. Prosmushkin's request and indicated that new counsel would be appointed, but also requested that Mr. Prosmushkin file any post-sentence motions and a notice of appeal on [Johnson]'s behalf to avoid the possible loss of any appellate rights. Mr. Prosmushkin agreed, and the same day, th[e trial c]ourt appointed Jennifer Santiago, Esq. as direct appeal counsel for [Johnson] on both docket numbers.

On June 5, 2013, Mr. Prosmushkin filed a motion for reconsideration of sentence on [Johnson]'s behalf. However, said motion was only filed on CP-51-CR-0006498-2012. On June 28,

- 4 -

2013, [Johnson] filed a *pro se* notice of appeal on both docket numbers. The Superior Court quashed both appeals as interlocutory on October 28, 2013, as the motion for reconsideration was still pending in CP-51-CR-0006498-2012.

On October 31, 2013, the aforementioned motion for reconsideration in CP-51-CR-0006498-2012 was denied by operation of law. The same day, Ms. Santiago filed a notice of appeal on CP-51-CR-0006498-2012. Ms. Santiago took no action on the present case, CP-51-CR-0006499-2012, and no appeal was filed.

On January 2, 2014, th[e trial c]ourt ordered [Johnson] to file a 1925(b) Statement of Matters as to CP-51-CR-0006498-2012. On June 30, 2014, th[e trial c]ourt issued an opinion in CP-51-CR-0006498-2012, asking the Superior Court to remand the case for re-sentencing. On March 3, 2015, the Superior Court affirmed the convictions in CP-51-CR-0006498-2012, but vacated the judgment of sentence and remanded the case for re-sentencing. On September 30, 2015, th[e trial c]ourt re-sentenced [Johnson] to the following: a term of ten (10) to twenty (20) years['] incarceration for attempted murder and a term of five (5) to ten (10) years['] incarceration for possession of a firearm by a prohibited person, to run consecutively. The remaining sentences for a term of three (3) years and six (6) months to seven (7) years['] incarceration for carrying firearms without a license and a term of one (1) to two (2) years['] incarceration for carrying firearms in Philadelphia were to run concurrent with the sentence for possession of a firearm by a prohibited person. Thus, the total sentence for CP-51-CR-0006498-2012 was fifteen (15) to thirty (30) years['] incarceration. The sentence of ten (10) to twenty (20) years['] incarceration in this case, CP-51-CR-0006499-2012, was not vacated and was designated to run consecutively with the sentence in CP-51-CR-0006498-2012. Thus, [Johnson]'s total sentence for both cases was twenty-five (25) to fifty (50) years['] incarceration.

On October 7, 2015, [Johnson] filed a *pro se* motion for reconsideration of sentence, raising arguments regarding the sentences under both docket numbers, although the motion was only filed under CP-51-CR-0006498-2012. On December 4, 2015, th[e trial c]ourt denied [Johnson]'s motion. On December 26, 2015, [Johnson] filed a notice of appeal from the order of judgment of sentence. On June 23, 2016, the [trial c]ourt issued

an opinion addressing [Johnson]'s appeal claims on both docket numbers. On February 26, 2017, [Johnson] filed a 1925(b) statement of matters on both docket numbers. On March 20, 2017, the Superior Court ordered th[e trial c]ourt to file a supplemental opinion addressing [Johnson]'s 1925(b) Statement []. On April 5, 2017, [Johnson] filed another 1925(b) Statement [] reiterating the claims raised in the 1925(b) Statement [] filed on February 26, 2017.

Th[e trial c]ourt filed the supplemental opinion on June 28, 2017. On May 9, 2018, the Superior Court issued its ruling. As to CP-51-CR-0006498-2012, the Superior Court held that it was precluded from addressing [Johnson]'s claims regarding alleged errors at trial because the Superior Court had already affirmed [Johnson]'s judgment of sentence during his initial direct appeal in CP-51-CR-0006498-2012 and had only remanded that case for th[e trial c]ourt to re-sentence [Johnson].

Regarding the matter presently on appeal, CP-51-CR-0006499-2012, the Superior Court held that the case was not properly before the Court because [Johnson]'s initial direct appeal only included docket number CP-51-CR-0006498-2012. [Johnson] subsequently sought *allocatur* on both docket numbers, which was denied by the Pennsylvania [Supreme] Court on January 2, 2019.

On August 26, 2019, [Johnson] filed a Post-Conviction Relief Act Petition under both docket numbers. During a hearing on February 29, 2024, th[e PCRA c]ourt determined that [Johnson]'s initial direct appeal as to CP-51-CR-0006499-2012 should not have been quashed, as there was no post-sentence motion pending in the case at that time. It was pending only on CP-51-CR-0006498-2012. The erroneous quashing of the appeal resulted in [Johnson] receiving no merits review of his direct appeal claims in that case, through no fault of his own. Subsequently, counsel only appealed CP-51-CR-0006498-2012. On February 29, 2024, th[e trial c]ourt entered an order granting reinstatement of appellate rights nunc pro tunc. On March 13, 2024, [Johnson] filed a *nunc pro tunc* notice of appeal from the order of the judgment of sentence.

Trial Court Opinion, 8/13/24, at 2-6 (footnotes and unnecessary capitalization

omitted).

On appeal, Johnson argues the trial court erred in permitting the Commonwealth to use as substantive evidence a prior inconsistent statement, as well as a prior statement of identification, of a non-party witness for its substantive value at Johnson's trial. Johnson's assertions hinge on the fact that Paige was not subject to cross-examination at trial.

> A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa. Super. 2014) (citations and quotation marks omitted).

Johnson contends the trial court erred in admitting as substantive evidence Paige's transcribed statement to police identifying Johnson as the shooter, which differed from her preliminary hearing testimony, as well as the photo arrays that Paige signed on which she circled Johnson and his co-defendant's photos. Johnson argues both the prior inconsistent statement and the prior statement of identification constituted inadmissible hearsay and violated his constitutional confrontation rights, as Paige was not subject to cross-examination at trial, nor present at trial for the fact-finder to observe.

Here, at the preliminary hearing, although Paige still identified Johnson from the photo array, reiterating that she had known him for 12 years due to growing up in the same neighborhood, she largely recanted the statements she had given earlier, in which she had identified Johnson as the shooter. ***See***

N.T., Preliminary Hearing, 5/31/12, at 9-24. Paige conceded her signatures were on the documents, but gave contradictory answers to all of the questions. *See id.*

After the preliminary hearing, but before trial, Paige became unavailable despite efforts to locate her. Notably, Johnson does not challenge the unavailability of Paige on appeal. Conversely, Johnson concedes numerous times throughout his argument that Paige was unavailable at trial, and that the trial court found Paige to be "unavailable."

At trial, in the absence of her testimony, the Commonwealth introduced Paige's prior testimony from the preliminary hearing and the court reporter who had recorded that testimony read the testimony into the record. *See* N.T., Jury Trial, 3/21/13, at 6-26. The Commonwealth then introduced Paige's written police statement into the record and questioned Detective Johnson about his taking of that statement, and Paige's responses to the questions, including her identification of Johnson through the photo arrays. *See id.* at 31-52.

Johnson insists the trial court erred in admitting the prior inconsistent statement at trial based on case law suggesting that hearsay and extra-judicial identifications can be admitted only if the witness is present in court and subject to cross-examination. *See* Appellant's Brief, at 4 (citing *Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986), *Commonwealth v. Lively*, 610 A.2d 7 (Pa. 1992), and *Commonwealth v. Ly*, 599 A.2d 613

(Pa. 1991)). Johnson contends the introduction of the evidence violated both the rule against hearsay and his confrontation rights.

The trial court concluded the prior inconsistent statement and prior statement of identification were admissible at trial under Pa.R.E. 804(b) because Paige's testimony at the preliminary hearing had provided an adequate opportunity for cross-examination pursuant to Pa.R.E. 803.1, following which admission of the prior statements was proper due to the unavailability of the witness.

> [P]ursuant to [Rule 803.1(1)], inconsistent statements made by a witness prior to the proceeding at which he is then testifying are admissible as substantive evidence of the matters they assert so long as those statements, when given, were adopted by the witness in a signed writing or were verbatim contemporaneous recordings of oral statements. At the subsequent proceeding, the declarant of the original statement need not (indeed, cannot) adopt the original statement, as the statement's inconsistency with the declarant's testimony at the present hearing renders the former statement admissible.

*Commonwealth v. Stays*, 70 A.3d 1256, 1262 (Pa. Super. 2013) (citations omitted).

Pursuant to Pa.R.E. 804, former testimony is not excluded by the rule against hearsay if the declarant is unavailable as a witness if the testimony was given at a trial, hearing, or deposition, and is offered against a party who had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Pa.R.E. 804(b)(1).

We cannot ignore the similarities between this case and *Stays*. There, the victim was shot while in the presence of the witness. *See Stays*, 70 A.3d

at 1260. When questioned by police, the witness identified Stays as the shooter and provided a physical description of Stays. ***See id.*** The witness initialed and signed a transcription of his interview with police. ***See id.*** The witness also identified a photo of Stays and circled the picture and signed with his initials. ***See id.***

At the preliminary hearing, the witness's prior inconsistent statements were offered after the witness denied having seen the shooter, recanting his prior statements to police, and claimed he did not identify Stays to the police. ***See id.***

After the preliminary hearing, but before trial, the witness was murdered. ***See id.*** At trial, the court admitted both the preliminary hearing testimony and the prior inconsistent statement into evidence. ***See id.***

On appeal, Stays argued that admission of the prior statement as substantive evidence at trial violated both the rule against hearsay and the confrontation clause as the declarant was unavailable to testify at trial. In rejecting the hearsay argument, this Court relied on Pa.R.E. 803.1, finding the prior inconsistent statement was admissible at the preliminary hearing "so long as the witness had been available for cross-examination" at the preliminary hearing. ***Id.*** at 1262. Notably, "it is not imperative that the defendant actually cross-examine the witness; if the defendant had an adequate opportunity to do so with full knowledge of the inconsistent statement, the mandate of Rule 803.1 is satisfied." ***Id.*** (citing ***Bazemore,***

614 A.2d at 686). Therefore, this Court found the prior inconsistent statement was properly admitted at the preliminary hearing, even though Stays did not choose to cross-examine the witness at the preliminary hearing, because "Stays was offered the opportunity at the preliminary hearing to cross-examine [the witness] about the original statement and the photo array identification, as well as [the witness's] attempted recantation." **Id.** Further, this Court held the proper introduction of the prior statement at the preliminary hearing under Pa.R.E. 803.1 rendered the statement "subsequently admissible at trial pursuant to Rule 804(b)", essentially rendering it, in effect, part of the preliminary hearing testimony itself. **Id.** at 1261-62.

Finally, the Court determined that the Confrontation Clause claim lacked merit as well, noting Stays had an ample opportunity to cross-examine the witness. **See id.** at 1265. The **Stays** Court explained that "the admissibility of former testimony and its ability to withstand Confrontation Clause challenges derives not from the actual conduct or content of cross-examination, but from its availability." **Id.** (emphasis omitted) (citing **Commonwealth v. Wholaver**, 989 A.2d at 904).

The instant case is not materially distinguishable from **Stays**. Here, Paige testified at Johnson's preliminary hearing and she was confronted by the Commonwealth with prior inconsistent statements. The record shows, and Johnson concedes, that Johnson had the opportunity at the preliminary

hearing to cross-examine Paige about the original statement and the photo array identifications, as well as Paige's attempted recantation. While brief, Johnson's counsel cross-examined Paige, specifically using the opportunity to question Paige about her recantation. *See* N.T., Preliminary Hearing, 5/31/12, at 24-25; *see also* Appellant's Brief, at 8 ("On cross-examination, Paige testified that she did not see Appellant with a gun in his hand … Paige[] further testified that she did not see Appellant in the car involved in the shooting incident.").

Accordingly, Paige's preliminary hearing testimony rendered both her identification of Johnson on the photo arrays and her signed statement to the police admissible at the preliminary hearing as prior inconsistent statements pursuant to Rule 803.1. *See Stays*, 70 A.3d at 1262. Further, pursuant to *Stays*, both the preliminary hearing testimony and the prior statements were properly admitted as substantive evidence at trial pursuant to Rule 804(b), given Paige's unavailability, with no Confrontation Clause violation.

We note, even if we were to agree with Johnson that the admission of Paige's prior statements at trial was erroneous, we would nonetheless conclude that any such error was harmless.

> In order for an error to be deemed harmless, an appellate court must determine that the error could not have contributed to the verdict. Under this standard, this Court has considered an error to be harmless where the improperly admitted evidence is merely cumulative of substantially similar, properly admitted evidence.

***Commonwealth v. Romero***, 722 A.2d 1014, 1019 (Pa. 1999) (citations omitted).

Here, we find that the evidence of Paige's identification of Johnson as the shooter from her prior statements to the police was merely cumulative of other, properly admitted evidence indicating his guilt. There is no question that prior testimony can be properly admitted under Rule 804. Accordingly, Paige's preliminary hearing testimony was properly admitted at trial. Paige's preliminary hearing testimony included a verbatim reading of her prior statement to police. ***See*** N.T., Jury Trial, 3/21/13, at 6-26. Given Paige's properly admitted testimony, which included her inculpation of Johnson in the shooting, even if admitting Paige's statements to the police were error, it would have been harmless. ***See Romero***, 722 A.2d at 1019.

As Johnson's sole issue is without merit, we affirm the judgment of sentence.

Judgement of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/11/2025